American Federation of State, County and Municipal Employees, District Council 84, AFL-CIO, Appellant *v.* City of Beaver Falls, Appellee.

Argued February 28, 1983, before Judges BLATT, WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Jonathan Walters,* with him *Alaine S. Williams, Kirschner, Walters & Willig, Weinberg & Dempsey,* for appellant.

*Edward S. Young,* for appellee.

Opinion by Judge Barbieri, May 5, 1983:

The present case comes before this Court on appeal by the American Federation of State, County and Municipal Employees, District Council 84, AFL-CIO (Union), from an order of the Court of Common Pleas of Beaver County which set aside an arbitrator's award reinstating William T. Early to his former position as a custodial employe of the City of Beaver Falls (City).

The factual background is concisely and fairly stated in the opinion of the common pleas court as follows:

On February 8, 1980 the Council of the City of Beaver Falls held an administrative hearing under the provisions of the Local Agency Law, Act of April 28, 1978, P.L. 202, No. 53, §5 (effective June 17, 1978), 2 Pa. C.S.A. §551, et seq., on charges brought against Early which resulted in his discharge. Said hearing was held to determine whether there was just cause for him to be terminated. Early was charged with (1) threat-

ening and confronting a city employee with a weapon and (2) two incidents of leaving his work station without permission. The dates on which these three incidents were alleged to have occurred were December 17 and 20, 1979, and January 3, 1980, respectively. Mr. Early was given notice of hearing and his right to be represented by Counsel (in accordance with the Local Agency Law, 2 Pa. C.S.A. §553) by the City Council in a letter dated January 28, 1980. At the hearing, which was conducted by an impartial hearing examiner, Early appeared with his private Counsel. Through his Counsel, Early offered testimony, presented a witness and cross-examined opposing witnesses. On February 12, 1980, the City issued its adjudication terminating Early's employment.

Early filed a grievance with the City of Beaver Falls on February 13, 1980, pursuant to the Public Employee Relations Act and the collective bargaining agreement between the City and the American Federation of State, County and Municipal Employees (AFSCME), District Council 84. Early contended that he had been terminated for "unjust cause."

An examiner for the Pennsylvania Labor Relations Board, after proceedings before that Board, made a ruling, accepted by City, directing that the grievance be submitted to arbitration. A hearing was held on July 27, 1981, followed by an adjudication of the arbitrator, dated August 19, 1981 which in effect found favorably to the City, but holding that the discharge was not for just cause, because notice of discipline was not timely; that the time span between December 17, 1979, the incident involving the knife threat and the notice of January 28, 1980 was "simply too long a period for the City to remain inactive;" and that such

a delay was "an affront to due process that cannot be explained away by any or all the reasons the City gave for the delay." According to the arbitrator, the City's explanation was

this delay came about because, in effect, it had no internal administrative procedures for handling discipline cases. Also, the City claims that the lapse of time between the incidents for which Early was discharged and his first hearing before Council was the result of a number of factors such as the Christmas holidays, an election, the negotiation of a new collective bargaining agreement, and the fact that it was treading carefully because of a pending charge of discrimination filed by Early with the Pennsylvania Human Rights Commission.

The arbitrator also held that the incidents of December 20, 1979 and January 3, 1980 could not be used to support the discharge of Early because they had been resolved by supervisory intervention.

The City of Beaver Falls filed a Petition for Review of Arbitrator's Decision with the Common Pleas Court of Beaver County requesting that the arbitrator's award be set aside on the ground that, in making his decision, the arbitrator exceeded his authority and on the additional ground that the decision itself was arbitrary and capricious.

The common pleas court, after noting legal principles to be considered, concluded that the issue presented was whether or not Early's employment was terminated for "just cause" as required by the collective bargaining agreement,[1] and since this was the

---

[1] The portion of the collective bargaining agreement which empowers the City to discharge an employe for just cause is Article V, which provides in pertinent part:

Except as expressly limited by the third class city code, other relevant statutes and codes and municipal home rule

sole issue before the arbitrator, he was without authority to go further and overturn the City's discharge of
Early on a basis not provided for in the agreement or
requested. The court stated: "[I]n doing so, the arbitrator could have exceeded the limits of his authority
as provided in the collective bargaining agreement."
We agree and will affirm.

As noted by the common pleas court, citing, *inter
alia, Leechburg Area School District v. Dale*, 492 Pa.
515, 424 A.2d 1309 (1981); *Neshaminy School Service
Personnel Association v. Neshaminy School District*,
53 Pa. Commonwealth Ct. 262, 417 A.2d 837 (1980):

> [U]nder the fourth step of the grievance pro
> cedure set out in the collective bargaining agree
> ment between the City and AFSCME, the griev
> ance's written notice of intent to proceed to ar
> bitration shall identify the agreement provision
> in dispute, the issue(s) to be determined, and
> the employee or employees involved. Agreement
> between City of Beaver Falls and American
> Federation of State, County and Municipal Em
> ployees Union, AFL-CIO, January 1, 1980, Art.
> XVIII, p. 21. Pursuant to this procedure the
> scope of the arbitrator's authority is limited as
> follows:
>
> The arbitrator shall have no power or au
> thority to add to, subtract from, or modify the
> provisions of this agreement in arriving at a de
> cision of *the issue presented* and shall confine

charters or provisions of this agreement, and reserving unto
the City any and all management rights which by law may
not be bargainable the City shall have and retain, solely
and exclusively, all other managerial responsibilities which
shall include, but not be limited to, the right . . . to reprimand, suspend, discharge for cause or otherwise relieve employees from duty for lack of work or other legitimate reasons; . . . .

his decision solely to the application and interpretation of this agreement. Agreement, supra, pp. 21-22. (Emphasis added.)

The sole issue raised in the grievance filed by Early was whether the City had terminated his employment for "just cause" as required by this agreement. See Agreement, supra, Art. III, p. 4. Despite finding for the City on the merits of the "just cause" issue of December 17, 1979, the arbitrator sustained the grievance because, in his opinion, the City had not acted in accordance with accepted standards of due process and fairness in terminating Early's employment because of said incident. Arbitration Award, supra, p. 6.

We are aware that we must sustain the arbitrator's award if it is based on anything that can be gleaned as the "essence" of the bargaining agreement, but this does not include changing the language of the contract or adding new and additional provisions. It should be stressed again that "due process" does not include adding time provisions which could well have been incorporated in the agreement if they were intended to apply, and that, in any event, the arbitrator cannot deal with an issue which was not part of the original grievance. As pointed out by the court below, the sole issue before the arbitrator was decided by him in favor of the City and then, ignoring his own factual finding of just cause relative to the December 17, 1979 incident, the arbitrator went on to impose a time limit on the giving of notice of proposed discipline which nowhere is spelled out in the agreement, even if that issue had been properly before the arbitrator.

Fundamentally similar to the instant case is *Philadelphia Housing Authority v. Union of Security Officers*, Pa. , 455 A.2d 625 (1983), in which the

Supreme Court reversed our divided support of an arbitrator's decision to reinstate a discharged employe where, as here, the arbitrator found that the misconduct had taken place. The Supreme Court, in an opinion by Justice (now Chief Justice) ROBERTS stated:

> Here, however, it is manifestly unreasonable to conclude that the Housing Authority could have intended to bargain away its absolute responsibility to ensure the integrity of its housing security force by discharging an officer who has defrauded one of the very people whom he is paid to protect. Having found that security officer Green had defrauded an elderly tenant and then lied about his conduct, the arbitrator was without authority to overturn the Authority's discharge of Green. As the arbitrator's decision to reinstate Green was unjustified by any terms that were or could properly have been contemplated by the parties to the collective bargaining agreement, the order of the Commonwealth Court affirming that decision must be reversed, and the award of the arbitrator vacated.

*Id.* at , 455 A.2d at 627.

In passing, it should be noted that there was accorded to Early the familiar kind of due process in all of the proceedings which took place, including adequate notice, the right to legal counsel and the right to present testimony. While it may be that time limits should have been agreed upon in the collective bargaining agreement, we agree with the common pleas court that such provisions cannot be added by the arbitrator.

Although a good deal of judicial deference is given to an arbitrator's award, *see United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S.

593 (1960), an arbitrator may not exceed the scope of the issues presented in the arbitration and can bind parties on issues they have agreed to submit to him. *Sley System Garages v. Transport Workers Union of America,* 406 Pa. 370, 178 A.2d 560 (1962); *In Re: Appeal of Rose Tree Media School District,* 65 Pa. Commonwealth Ct. 148, 442 A.2d 23 (1982); *Carr v. Joyce,* 74 Pa. D. & C.2d 288 (1975). *See also Piggly Wiggly Operator's Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Driver's Union, Local No. 1,* 611 F.2d 580 (5th Cir. 1980), *Textile Worker's Union of America, AFL-CIO, Local Union v. American Thread Co.,* 291 F.2d 894 (4th Cir. 1961), *International Ladies' Garment Workers' Union, Local 111 v. DeVille Blouse Co.,* 486 F. Supp. 1253 (E.D. Pa. 1980). With regard to this principle, our Supreme Court has stated that:

> The power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or act inconsistently with the terms of the submission. To put it another way, their powers, being derived from submission, are measured by it.

*Sley Systems Garages* at 374, 178 A.2d at 561 (quoting Standard Pa. Prac., Arbitration and Award §93). In the instant case, as previously discussed, the sole issue filed by the grievant for arbitration was whether or not he was terminated for unjust cause. After resolving the merits of this issue in favor of the City, the arbitrator was without the power or authority to decide whether or not the City gave timely notice of disciplinary action to the grievant. The issue of notice was not one submitted for arbitration. Accordingly, the order of the court of common pleas setting aside the arbitrator's award is hereby affirmed.

144 

ORDER

AND Now, this 5th day of May, 1983, the order of the Court of Common Pleas of Beaver County, dated December 10, 1981, setting aside the arbitrator's award to William T. Early is hereby affirmed.

Judge WILLIAMS, JR. concurs in the result only.